IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MAYO, | : | |
|     Plaintiff, | : | 1:18-cv-1492 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| LISA HOLLIBAUGH, *et al.*, | : | |
|     Defendants. | : | |

## **MEMORANDUM**

## **March 26, 2020**

Plaintiff William Mayo ("Mayo"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), incarcerated at the State Correctional Institution at Smithfield ("SCI-Smithfield"), Huntingdon, Pennsylvania, commenced this action in the Court of Common Pleas of Huntingdon County alleging that Defendants Lisa Hollibaugh ("Hollibaugh"), Lt. Rhone ("Rhone") and Eric Tice ("Tice") violated his Fourteenth Amendment due process rights and denied him access to the courts. (Doc. 1-2, p. 1). Defendants removed the matter to this Court on July 27, 2018. (Doc. 1-4).

Presently pending is Defendants' motion (Doc. 23) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion will be granted.

I.  **STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own

pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## II. STATEMENT OF MATERIAL FACTS[1]

On January 9, 2018, DOC officials transferred Mayo from the State

---

[1] Mayo's statement of material facts is found at Docket Entry 32, pp. 14-29.

Correctional Institution at Fayette ("SCI-Fayette") to SCI-Smithfield and placed him in the Restricted Housing Unit ("RHU"). (Doc. 25, ¶¶ 5, 6; Doc. 32, ¶¶ 5,6). Inmates housed in the RHU may retain in their cell only those personal items that fit in one standard records center sized box. (*Id*. at 7; *Id.* at 7).

Each facility provides a method to allow for those inmates housed in the RHU, who are litigants in a court action, to have access to legal materials. (*Id.* at 8; *Id.* at 8). Specifically, a "legal exemption" allows an inmate to have additional boxes for legal property. (*Id.* at 9; *Id.* at 9). If an inmate wishes to apply for a legal exemption, a formal request must be made to the Superintendent's Assistant, who investigates whether the inmate has open and active cases that would warrant an exemption, and decides whether an exemption is justified. (*Id.* at 10; *Id.* at 10). Although SCI-Fayette and SCI-Smithfield utilize the same process, a legal exemption does not follow an inmate from one facility to another and the number of boxes allowed under the legal exemption varies from facility to facility. (*Id.* at 11-13; *Id.* at 11-14). While housed at SCI-Fayette, Mayo was permitted to have three extra boxes for his legal property in his cell. (*Id.* at 14; *Id.* at 14). SCI-Smithfield only allows one extra box for a legal exemption. (*Id*. at 15; *Id*. at 15).

When Mayo transferred to SCI-Smithfield, Defendant Rhone informed him that he had to make a request to Defendant Hollibaugh for a legal exemption. (*Id.*

5

at 16; *Id.* at 16). Mayo submitted a request on January 25, 2018. (*Id.* at 17; *Id.* at 17). In his request, Mayo enumerated the following civil actions pending in federal and state courts:

 a. *Mayo v. Finley*, 2:16-01514 (WDPA)

 b. *Mayo v. Keller*, 2:16-1723 (WDPA)

 c. *Mayo v. Oppman*, 2:17-311 (WDPA)

 d. *Mayo v. Newman*, 2:17-1490 (WDPA)

 e. *Mayo v. Haines*, 194 of 2017, GD (Fayette County)

 f. *Mayo v. Newman*, 109 of 2017, GD (Fayette County)

 g. *Mayo v. SCI Greene's Admin. Staff,* 429 MD 2016 (Greene County)

 h. *Mayo v. Prison Admin.*, 2277 of 2016 (Fayette County)

 i. *Mayo v. Pa Dept of Corrections*, 17 OCR 1001 (U.S. Department of Justice)

(*Id.* at 18; *Id.* at 18). Defendant Tice issued a memo on January 29, 2018, approving the exemption and allowing one additional storage box for the above-referenced cases. (*Id.* at 19; *Id.* at 19). Mayo asserts that he did not receive the memo until February 21, 2018, after the filing of his February 8, 2018 grievance. (Doc. 32, ¶ 19).

Inmates in the RHU are also permitted to exchange legal property kept in the cell with the property kept in storage every thirty days. (Doc. 25, ¶ 20; Doc. 32 ¶

20).  They can also request additional legal exchanges.  (*Id.* at 21; *Id.* at 21).  Mayo requests additional exchanges, but he does not feel they are a priority due to staffing issues and other daily activities.  (*Id.* at 22; *Id.* at 22).

During the relevant time, Mayo was litigating ten matters in the state and federal courts, including "*Mayo v. SCI Greene's Admin Staff, et al.*, 1192 CD 2018: appeal of decision in 692 AD 2016 (Greene County)." (*Id.* at 41; *Id.* at 41). He believes that his inability to adequately prepare resulted in an entry of summary judgment in favor of the SCI Greene Defendants.  (*Id.* at 42, 43; *Id.* at 42, 43). Mayo timely filed his brief in opposition to the motion for summary judgment in *Mayo v. SCI Greene's Admin Staff, et al.* (*Id.* at 45, 46; *Id.* at 45, 46).  Mayo has never missed a court deadline in any of the cases litigated during the relevant time period and has requested, and been granted, extensions of filing deadlines.  (*Id.* at 46, 47; *Id.* at 46, 47).

The DOC's applicable Inmate Grievance System policy, which provides inmates an avenue to resolve their problems and air concerns is set forth in Administrative Directive 804 (DC-ADM 804), effective May 1, 2015. (*Id.* at 23; *Id.* at 23).  Pursuant to DC-ADM 804, any inmate personally affected by a DOC or institutional action or policy or by the action of a DOC employee may file a grievance at the facility where the event occurred.  (*Id.* at 24; *Id.* at 24).  The

grievance must be submitted in writing to the Facility Grievance Coordinator within fifteen working days after the event upon which the grievance is based using the grievance form which is available on all housing units or blocks. (*Id.* at 24; *Id.* at 24). The grievance must include a statement of the facts relevant to the claim, identify anyone directly involved in the event, and state any claims he or she wishes to make concerning violations of DOC directives, regulations, court orders, or other law. (*Id.* at 25; *Id.* at 25).

Mayo filed Grievance #720562 on February 8, 2018, grieving that he had a three-box legal exemption at SCI-Fayette and has been denied the same number of boxes at SCI-Smithfield. (*Id.* at 26; *Id.* at 26). Defendant Rhone responded to Grievance #720562 on March 1, 2018, stating that SCI-Smithfield only allows one additional box in the RHU for safety purposes and that Mayo can request an additional legal exchange every month. (*Id*. at 30; *Id.* at 30). Although the initial grievance does not specify individuals responsible for the legal exemption limitation, Mayo's appeal identifies Defendant Rhone. (*Id*. at 27; *Id*. at 27). The response to the initial grievance was upheld on appeal. (*Id.* at 31, 32; *Id.* at 31, 32).

On February 8, 2018, Mayo grieved, in Grievance #720566, that when Correctional Officer Bickle delivered his mail, he notified Mayo that he was confiscating an envelope that contained legal mail but failed to provide him with a

8

confiscated items receipt. (*Id.* at 33-35; *Id.* at 33-35). Through responses to the initial grievance and the appeal procedure, prison officials informed Mayo that the process of confiscating the legal mail envelope and providing a copy to the inmate is approved by the Office of Chief Counsel. (*Id.* at 36-38; *Id.* at 36-38).

### III. <u>DISCUSSION</u>

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, §1983 limits liability to persons who violate constitutional rights.

### A. Exhaustion of Administrative Remedies

Defendants first seek an entry of summary judgment based on a failure to exhaust administrative remedies. (Doc. 24, p. 11). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57.

While recognizing that the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors, the United States Court of Appeals for the Third Circuit recently noted that the jailors must comply with the demands of the system they created. *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d

Cir. 2019). The Court went on to hold that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." (*Id.*).

Defendants first seek summary judgment based on Mayo's failure to identify either Hollibaugh or Rhone in the grievances. Grievance #720562 concerns the legal exemption applicable to boxes of legal property. Although the initial grievance does not specify individuals responsible for the limitation placed on the legal exemption, he clearly identifies the policy, cites his objection to the policy, and includes detailed and relevant facts. (Doc. 18-4, p. 2). "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007). The Court will consider the merits of this issue.

Conversely, the claim that Defendants violated his due process rights in reading his legal mail prior to him receiving it is wholly unexhausted in that he failed to file a grievance raising this issue prior to commencing this action. Mayo's opposing argument is two-fold. He first argues that Defendants too narrowly construe Grievance #720566 concerning Officer Bickle's confiscation of

his legal mail envelope. He asserts that a liberal construction of the grievance reveals inclusion of his unconstitutional reading of his mail claim. In the grievance, under the heading "Brief History of Relevant Facts" Mayo states as follows:

> This grievance is being submitted to report that on the morning of February 6, 2018 at approximately 9:30 AM I had a piece of legal mail delivered to me (by c/o Bickle) (from the Security Dept.) which notified me, that he's confiscating the envelope that the legal documents' [sic] arrived in, in which my formal reply was "the envelope <u>isn't</u> made out of tyrant material its [sic] regular standard white paper so how is it subsequently being deemed contraband" and because he couldn't provide either any logical reason that's substantially by institutional policy nor even a confiscated items receipt specifying the following three (3) things: (1) that my envelope was confiscated, (2) reason for confiscation and (3) I was provided a copy of the confiscated envelope, so I'm asking for the meritorious basis within my claim if the foregoing grievance could be accepted for a full investigative review.

(Doc. 25-2, pp. 18, 19) (emphasis in original). He essentially reiterates the above in his appeal. (*Id.* at 22, 23). Through responses to the initial grievance and the appeal procedure, prison officials informed Mayo that the process of confiscating the legal mail envelope and providing a copy to the inmate is approved by the Office of Chief Counsel. (*Id.* at. 17, 21,24). The grievance is devoid of any complaint about, or reference to, the reading of his legal mail. As such, we reject Mayo's liberal construction argument as it has no support in the record.

His second argument is that he exhausted his administrative remedies because he filed a grievance on December 17, 2018, almost five months after he initiated the action. (Doc. 32, pp. 37, 38). This argument is unavailing. "A prisoner may not satisfy the ... exhaustion requirement by exhausting administrative remedies after initiating suit in federal court." *Jenkins v. Dancha*, 723 F. App'x 174, 175 (3d Cir. 2018). "If exhaustion is incomplete when an inmate files suit, dismissal is mandatory." *Ryder v. Bartholomew*, 715 F. App'x. 144, 149 (3d Cir. 2017); *see also Turner v. Sec'y Pennsylvania Dep't of Corr.*, 683 F. App'x. 180, 182 n.1 (3d Cir. 2017) ("An inmate cannot cure non-compliance with § 1997e(a) by exhausting remedies after filing his complaint."); *see also Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) ("Whatever the parameters of 'substantial compliance' referred to [in *Nyhuis*, 204 F.3d 77–78] it does not encompass ... the filing of a suit before administrative exhaustion, however late, has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint." (footnote omitted)).

Defendants are entitled to an entry of summary judgment based on Mayo's failure to exhaust the reading of his legal mail claim prior to commencement of the action.

B.  **Merits**

1.  Access to Courts

Mayo claims that the RHU legal box exemption imposed at SCI-Smithfield, which limited him to the two boxes of his legal property, denied him access to the courts. In *Bounds v. Smith*, 430 U.S. 817(1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir.1981) (internal citations omitted). Following *Lewis* courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir.1997). An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d

14

Cir.2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)) (internal quotations omitted). Even where "actual injury" may be present, *Casey* cautions that in situations involving prison security—such as heightened restrictions on prisoners in disciplinary lockdown—certain regulations may impinge upon inmates' constitutional right of access but nonetheless be valid: these must be "reasonably related to legitimate penological interests.'" *Lewis,* 518 U.S. at 362 (*quoting Turner v. Safley*, 482 U.S. 78, 89(1987)).

Mayo generally argues that "he isn't in possession of any boxes of his property, in which as a [sic] independent fact, placed [him] at a legal disadvantage in terms of being able to adequately litigate his cases." (Doc. 32, p. 42). In his declaration, he takes issue with being afforded the opportunity to access his legal property once every thirty days subject to the availability of the RHU staff. (Doc. 32, p. 8). He declares that "[b]ecause of the disadvantage that [he] was placed at [he] lost several of his actions, particularly from as abovementioned not being able to adequately prepare responsive pleadings, *inter alia*, all predicated from not being in possession of [his] legal property…." (*Id.* at 9). He further asserts that it's his position that "a cursory review of the record should be sufficient proof to substantiate, particularly because [he] was only able to utilize what <u>little</u> property

15

he had, in which ultimately placed [him] at a handicap regarding his responsive pleadings." (*Id.* at 42, 43) (emphasis in original).

Mayo's general assertions that the limitations imposed by the RHU's legal box exemption hindered his ability to effectively litigate his claims is insufficient to meet the actual injury requirement. Further, his "belief" that because he was not able to adequately prepare, the matter of *Mayo v. SCI Greene's Admin Staff, et al.* did not survive summary judgment, is insufficient to meet the actual injury requirement. As noted s*upra*, he timely filed his brief in opposition to the motion for summary judgment in *Mayo v. SCI Greene's Admin Staff, et al*, he never missed a court deadline in any of the cases being litigated during the relevant time period, and has requested, and been granted, extensions of filing deadlines. He fails to identify an "arguable," "nonfrivolous" underlying cause of action, either anticipated or lost, and demonstrate, as he must do at the summary judgment stage, how the Defendants' actions frustrated his efforts to litigate that action. *Lewis*, 518 U.S. at 351–53; *Christopher v. Harbury*, 536 U.S. at 415. Applying *Lewis* and its progeny to the undisputed facts requires the entry of summary judgment on Defendants' behalf.

2. <u>Deprivation of Property</u>

To the extent that Mayo asserts a due process claim, the United States

16

Supreme Court has held that meaningful post-deprivation remedies provide sufficient due process for negligent deprivations of property, *Parratt v. Taylor*, 451 U.S. 527, 530, (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986); id. at 530, and intentional deprivations of property, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The DOC grievance procedure provides an adequate post-deprivation remedy, *see, e.g., Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir. 2000), and the existence of this post-deprivation remedy forecloses a due process claim. Even if the prison grievance procedure were constitutionally inadequate, Mayo could take advantage of state tort law which may serve as an adequate post-deprivation remedy. See 42 PA. CONS. STAT. ANN. § 8522(a), (b)(3).

Defendants are entitled to an entry of summary judgment on this claim as well.

## IV. **CONCLUSION**

Based on the above, Defendant's motion (Doc. 23) for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted.

An appropriate Order follows.